# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

| | |
|---|---|
| United States of America<br>v.<br><br>ALEJANDRO ENRIQUEZ,<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)        1:21-mj-0548<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __June 13, 2021__ in the county of __Hendricks__ in the __Southern__ District of __Indiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 (a)(1),(b)(1)(A) | Possession of Methamphetamine with the Intent to Distribute |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

/s/ Derek Heller
*Complainant's signature*

Derek Heller, TFO/DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/16/2021

Paul R. Cherry
United States Magistrate Judge
Southern District of Indiana

City and state: Indianapolis, IN

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Derek Heller, a Task Force Officer with the Drug Enforcement Administration (DEA), Indianapolis, Indiana, being duly sworn, state as follows:

**Affiant Background and Purpose of Affidavit**

1.      I, Derek Heller, am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.      I have been employed as a Patrolman with the Brownsburg Indiana Police Department (hereinafter "BPD") since November 2001. I am currently assigned to the Drug Enforcement Administration Indianapolis District Office (hereinafter "DEA IDO") as a federally deputized Task Force Officer (hereinafter "TFO") and have been so assigned since September 2014. The DEA IDO is a multi-agency task force that investigates major narcotics trafficking organizations.

3.      As a Detective with the Brownsburg Police Department, assigned to the DEA IDO, I have investigated illicit controlled substance trafficking in central Indiana. I have had formal training and experience in controlled substance investigations and am familiar with the manner in which controlled substances are packaged, marketed, and consumed. I have received training in the identification of the various types of controlled substances. During the course of my employment, I have become familiar with the ordinary meaning of controlled substance slang and jargon. I am familiar with the manners and techniques of traffickers in controlled substances as practiced locally and elsewhere. I have participated in several aspects of drug investigations including electronic surveillance, debriefing defendants, informants and witnesses, conducting

surveillance, and the execution of judicially authorized search warrants. I have been involved in more than one-hundred arrests for drug possession and/or dealing controlled substance violations. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code.

4. This affidavit is submitted in support of a criminal complaint charging Alejandro ENRIQUEZ with Possession of Methamphetamine with the Intent to Distribute, in violation of Title 21, United States Code, Section 841 (a)(1),(b)(1)(A).

5. The statements contained in this Affidavit are based in part on my direct involvement in this investigation; on my experience and background as a Task Force Officer of the DEA; on information provided by and conversations held with other law enforcement officers, including Special Agents/Task Force Officers of the DEA, officers of the Brownsburg Police Department, and other law enforcement officers; and on a review of reports and database records. I have not included each and every fact that has been revealed through the course of this investigation. I have set forth only the facts that sufficient to establish probable cause for the issuance of the Complaint and associated arrest warrant.

## Facts and Circumstances

6. On June 13, 2021, at approximately 4:31 p.m., Officer Ben Pyatt, with the Brownsburg Police Department, conducted a traffic stop of a dark grey Dodge Ram Pickup truck bearing Texas temporary paper plate 15474D3 as it was traveling westbound on Interstate 74 near mile marker 62 for improper lane usage. The pickup truck returned to a grey 2017 Dodge Ram registered to Alejandro ENRIQUEZ in El Paso, Texas. Officer Pyatt identified the driver as

Alejandro ENRIQUEZ and the female passenger as Silvia Magallanes.

7.  As Officer Pyatt was filling out a warning ticket for the traffic offense in his police cruiser with ENRIQUEZ, Officer Pyatt engaged ENRIQUEZ in conversation about their travels. ENRIQUEZ stated that they came to Indiana to see a cousin of his. ENRIQUEZ then corrected himself and said he calls her a cousin, but she is really the daughter of his godfather, who had just passed away. ENRIQUEZ then said they were now trying to go to a gas station and then go back to El Paso. Officer Pyatt found this route of travel unusual as most people would be on I-70 to get to west Texas, not on I-74 which takes you northwest. ENRIQUEZ said they just spent the weekend over here. Officer Pyatt asked him where they stayed and he told me they stayed with the girl he was calling his cousin. Officer Pyatt asked if she lived in Indianapolis and ENRIQUEZ first said yes, but then told me it was the last exit, pointing behind him, meaning Brownsburg. ENRIQUEZ said there is a McDonalds there, where she picked him up at, as ENRIQUEZ left his truck there. ENRIQUEZ stated that his cousin's name was "Lisa Marquez."

8.  Officer Pyatt then asked some of the same questions to passenger Magallanes who was still sitting in the passenger seat of the Dodge Ram. Magallanes stated that they were there visiting a cousin in Indiana called "Maria" and they stayed at her house for two or three nights.

9.  Due to the inconsistent and vague stories and ENRIQUEZ's nervous tendencies Officer Pyatt believed that ENRIQUEZ and Magallanes were being deceptive about their travel plans for such a short stay on a very long trip. At the vehicle, Officer Pyatt also noticed very little luggage, if any, in the car or the bed of the truck. At this time, Officer Pyatt requested a Brownsburg Police Department K9 respond to the scene. While waiting for the K9 to responded Officer Pyatt asked ENRIQUEZ for verbal and written consent to search the Dodge Ram to which ENRIQUEZ agreed.

10. At approximately 4:51 p.m., Officer John Flowers and his K9 partner arrived and conducted an open air sniff of the Dodge Ram. The K9 gave a positive indication for the odor of narcotics on the Dodge Ram. Officer Pyatt then conducted a search of interior of the vehicle. On the rear driver side of the vehicle, Officer Pyatt located some loose tire changing tools. Upon examining the spare tire, Officer Pyatt didn't think it looked like the tire that would have went to this truck. Furthermore, Officer Pyatt noticed that the dirt on the tire and rim was disturbed with hand and fingerprints all over it. Officer Pyatt utilized the tools to lower the tire from the bed of the truck. As the tire lowered, Officer Pyatt felt the tire and immediately recognized the tire to be way too heavy. Officer Pyatt could also hear and feel objects inside the tire. Officer Pyatt then cut a hole in the spare tire and immediately saw duct taped packages inside the tire.

11. Officer Pyatt removed 45 individual packages, mostly wrapped in duct tape and weighing approximately one pound each, of suspected methamphetamine with a total weight of approximately 50 pounds. One of the packages field tested positive for methamphetamine. All drug evidence is being sent to the DEA North Central Lab for further testing.

12. Both ENRIQUEZ and Magallanes were arrested and informed of their Miranda rights. ENRIQUEZ and Magallanes were transported by Officer Pyatt to the Brownsburg Police Department for further processing as well as an audio/video recorded interview. During a post-Miranda interview, ENRIQUEZ fully confessed to receiving the packages from an unknown individual in El Paso, Texas, placing them inside the spare tire, and transporting them to Indiana where he was supposed to meet someone at the Pittsboro, Indiana exit to drop the drugs off and collect the money. ENRIQUEZ stated his wife knew nothing about it and gave her a different reason for the trip. Magallanes statements appeared to confirm that she had no knowledge of the methamphetamine or the true reason for the trip so she was released with no charges.

13. The above-described investigation took place within the Southern District of Indiana, Indianapolis Division.

14. Based on my training and experience, the amount of methamphetamine located, and ENRIQUEZ's post arrest statement are consistent with the possession of methamphetamine with the intent to distribute.

## Conclusion and Request

15. Based upon my training and experience and the facts set forth herein, I respectfully submit that there is probable cause to believe that, on June 13, 2021, in Hendricks County, Indiana, Alejandro ENRIQUEZ committed the offense of Possession of Methamphetamine with the Intent to Distribution in violation of Title 21, United States Code, Section 841 (a)(1),(b)(1)(A). Accordingly, I request the Court issue a criminal complaint charging ENRIQUEZ with these offenses and issue a warrant for his arrest.

s/ Derek Heller

Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to me, pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3), by reliable electronic means.

Date: 6/16/2021

Paul R. Cherry
United States Magistrate Judge
Southern District of Indiana

5